```
DEMETRAS & O'NEILL
J. Craig Demetras
State Bar No. 4246
Shelly T. O'Neill
State Bar No. 986
230 E. Liberty Street
Reno, Nevada 89501
(775) 348-4600
(775) 348-9315 Facsimile
Attorneys for Debtor
```

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE:<br>JOHN GESSIN<br><br>                 Debtor.<br>_____/ | Case No. BK-N-11-51818<br><br>Adv No: 11-5078 |
| ALLISON TATIANO MOORE,<br><br>                 Plaintiff,<br>vs.<br>JOHN GESSIN,<br><br>                 Defendant.<br>_____/ | **OPPOSITION TO MOTION<br>FOR SUMMARY JUDGMENT RE:<br>DISCHARGEABILITY** |

      Debtor/Defendant, JOHN GESSIN, by and through his counsel of record, Shelly T. O'Neill, Esq., the Law Offices of Demetras & O'Neill, offers his Opposition to Plaintiff's Motion for Summary Judgment.

      This Opposition is based upon the Points and Authorities, all pleadings and papers on file herein, and such other evidence as may produced at any hearing on said motion.

/ / /

/ / /

# POINTS AND AUTHORITIES

## I.  FACTS

*"Oh the tangled web we weave when first we practice to deceive."*[1]

Debtor/Defendant, John Gessin, has been caught in a web of horrific facts and lies, which could negatively impact his life for many years.  The weavers of those facts and lies are three angry women who have joined together in a conspiracy[2] to wreck his life.

The first of the angry women is Christina Ho, the mother of his only child, Jordan, age 7.  She is, on information and belief, a convicted felon,[3] as is Mr. Gessin.[4]  Ms. Ho and Mr. Gessin have been engaged in protracted and bitter custodial litigation in the Family Division of the Second Judicial District Court over Jordan.[5]

Ms. Ho has met, befriended and exchanged information with her co-conspirators in an effort toward bettering her position in the custody dispute, and, it appears for some form of malevolent revenge.[6]

The second of the angry women is the Plaintiff, Allison Taitano Moore, a high school teacher who met Mr. Gesson while participating in an on-line dating service known as "Match.com".[7]  She has alleged that within days of meeting Mr. Gessin, a total stranger, that she cashed out a certificate of deposit in the amount of approximately Thirty

---

[1] <u>Marmion</u>, Sir Walter Scott, 1808

[2] See Affidavits of Brent Sanada, Abner Lopez and Michelle Caruso, attached hereto as Exhibits "1", "2" and "3".

[3] See Affidavits of Brent Sanada, Abner Lopez and Eugene Lee, attached hereto as Exhibits "1", "2" and "4".

[4] See Affidavit of Eugene Lee, attached hereto as Exhibit "4".

[5] See Affidavit of Brent Sanada attached hereto as Exhibit "1".

[6] See Affidavits of Brent Sanada, Abner Lopez, Michelle Caruso and Eugene Lee, attached hereto as Exhibits "1", "2", "3" and "4".

[7] See Motion for Summary Judgment, page 2, line 7.

Law Office of
Demetras & O'Neill
230 East Liberty Street
Reno, Nevada 89501
(775) 348-4600

2

Thousand Dollars ($30,000.00) and gave it to Mr. Gessin in cash, in a shoe box.[8]

There are no receipts, records, proof or acknowledgment of the cash transfer to or by Mr. Gessin.  Ms. Moore has alleged that she gave the money to Mr. Gessin to "invest on her behalf" based upon his personal profile posted on the dating website.  There appears to be no indication that Ms. Moore performed any inquiry or due diligence as to the personal descriptions listed by Mr. Gessin on the dating website, which clearly put him in a positive light.[9]  Many of the statements posted are also untrue.  This is a dating website, not an SEC filing or credit application.  There are no sanctioned solicitations to loan or borrow money associated with this website, and certainly no representations that what participants say about themselves is accurate.

It appears that Ms. Moore has married since her encounter with the Debtor. Nonetheless, after the break-up of their relationship, Ms. Moore (aka "Taitano") filed a civil complaint against Mr. Gessin alleging fraud, breach of fiduciary duty, misuse of her funds and failure to account therefor, conversion, and obtaining her funds through a false statement in writing and violation of NRS 205.375 in perpetrating the foregoing acts.[10]

The matter was sent to mandatory arbitration.[11]  The arbitration hearing was held on June 3, 2010.  Mr. Gessin appeared with counsel[12], but presented no testimony or exhibits in his defense, and rested his case after the close of Ms. Moore's case.'"[13]

Mr. Gessin's attorney refused to participate in the arbitration hearing, offer any

---

[8] See Motion for Summary Judgment, page 3, lines 1-2.

[9] See Online Dating Service "Match.com" website listing for John Gessin (1vetteguy4u) attached hereto as Exhibit "5".

[10] See Complaint - Case No. CV09-00710, attached hereto as Exhibit "6".

[11] See Arbitrator's Award, page 1, line 19.

[12] See Findings of Fact and Conclusions of Law, dated 2/21/12, page 6, lines 1-4.

[13] See Findings of Fact and Conclusions of Law, dated 2/21/12, page 6, lines 1-4.

1  evidence, or present witnesses, and rested his case after the conclusion of that of the
2  Plaintiffs'.[14]  This action was taken against Mr. Gessin's wishes as he had provided
3  numerous exculpatory documents and witnesses to his counsel.[15]  The Arbitrator ruled
4  against Mr. Gessin.[16]

5  Mr. Gessin sought a *de novo* review of that hearing, which was opposed by Ms.
6  Moore and denied by the District Court, based upon his counsel's earlier lack of
7  presentation of a defense.[17]  Ms. Moore similarly argued in her pleadings that "[t]he
8  *arbitrator, further, ordered the filing of the Rule 13 required Pre-hearing Statement.  Mr.*
9  *Gessin's Pre-Arbitration Statement consisted of twenty-three lines with virtually no*
10  *discussion of the real issues in the case and no citations to any legal authority.  The*
11  *Arbitrator's Award describes the statement as 'rather cryptic"*.[18]  It is suffice to say that
12  Mr. Gessin's day in court (the arbitration hearing) left much to be desired.

13  The third angry woman in this tragic trilogy is Stacey Rissone.  Ms. Rissone
14  inserted herself in this conspiracy some four (4) years after dating Mr. Gessin.  She
15  similarly claimed that she had "given" Mr. Gessin money to invest on her behalf.[19]  Ms.
16  Rissone has filed a complaint for nondischargeability.

17  The seminal issue for the Court to determine is whether this creditor's reliance on
18  the alleged representations of Mr. Gessin on his dating profile and their brief relationship
19  were justifiable based upon the facts and circumstances.

---

[14] See Findings of Fact and Conclusions of Law, dated 2/21/12, page 6, lines 1-4.

[15] See Affidavit of John Gessin attached hereto as Exhibit "7".

[16] See Arbitrator's Award.

[17] See Findings of Fact, Conclusions of Law, and Judgment entered 10-28-10, attached hereto as Exhibit "8".

[18] See Motion for Order to Strike Defendant's Request for Trial De Novo Pursuant to NAR 22, page 7, lines 12-15, attached hereto as Exhibit "9".

[19] See Adversary Complaint by Stacey Rissone, Case No. 11-05077.

## II. LEGAL AUTHORITY

The Plaintiff seeks to have Mr. Gessin's debt declared nondischargeable pursuant to 11 U.S.C. §523(a)(2). That provision makes nondischargeable "any debt for money, property, services, or an extension, renewal, or financing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition".

Although there is some reference to §523(a)(4) "breach of fiduciary duty" by the Plaintiff in her Motion for Summary Judgment[20], there is no allegation of same in the Adversary Complaint and there has been no finding in any court.

In reviewing a motion for summary judgment a court must review the evidence in the light most favorable to the non-moving party in determining whether there are any genuine issues of material fact. Parker v. First Bank (In re Bakersfield Westar Ambulance, Inc.), 123 F.3d 1243, 1245 (9th Cir. 1997).

### Justifiable Reliance

In order to establish that a debt is nondischargeable under §523(a)(2)(A), a creditor must establish five elements by a preponderance of the evidence:

"1. Misrepresentation, fraudulent omission or deceptive conduct by the debtor;

2. Knowledge of the falsity or deceptiveness of his of his statement or conduct;

3. An intent to deceive;

4. ***Justifiable reliance by the creditor on the debtor's statement or conduct***;

5. Damage to the creditor proximately caused by its reliance on the debtor's statement or conduct." (Emphasis added.) In re Mariconda (BAP No. AZ-11-1076-MyDKi 9th Cir. AZ 2011); Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re

---

[20] Motion for Summary Judgment, page 6, lines 14-21.

Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000); Harmon v. Korbrin (In re Harmon), 250 F.3d 1240, 1246 (9th Cir. 2001);

The Plaintiff admits that within approximately <u>one week</u> of meeting a total stranger on a dating website that she cashed out a certificate of deposit in the amount of approximately Thirty Thousand Dollars ($30,000.00) and gave it to him, in cash.[21]  She asserts that this action was based upon the representations made by Mr. Gessin on his dating profile and during their brief relationship.  Mr. Gessin's representations on the dating website included the following:

"• that he was a successful businessman;
• that he had a graduate degree;
• that he own(s) and operates(s) two businesses;
• that he made $150,000.00 per year;
• that he does extremely well in business;
• that he does extremely well in finances;
• that he does extremely well in career stability;"[22]

"The determination of justifiable reliance is a question of fact, subject to the clearly erroneous standard of review." In re Jogert, Inc., 950 F.2d 1505 (9th Cir. 1991). "Dischargeability is a question of federal law independent of the issue of the validity of the underlying claim." Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed 2d 755 (1991).

The Ninth Circuit Court of Appeals determined that the word justifiable should precede the term reliance based upon the standards set forth by *"Prosser* and *Keeton on the Law of Torts* and the *Restatement (Second) of Torts*.  They make it quite clear that at

---

[21] See Motion for Summary Judgment, page 2, lines 4-6, page 3, lines 1-2.

[22] *Id.* at lines 6-20.

Law Office of
Demetras & O'Neill
230 East Liberty Street
Reno, Nevada 89501
(775) 348-4600

6

1  common law the justifiable reliance standard is the proper one." In re Kirsch, 973 F.2d
2  1454, 1458 (9th Cir. 1992). That Court provided an analysis of the term "justifiable" *vis a*
3  *vis* the term "reasonable" reliance standards used by many courts and set forth examples,
4  ". . . if the conduct of the plaintiff in the light of his [or her] own intelligence and
5  information was manifestly unreasonable .. . he [or she] will be denied recovery–a person
6  cannot purport to rely on preposterous representations or close his [or her] eyes to avoid
7  discovery of the truth. . .". Id. at 1459, quoting Justice Traynor in Seeger v. Odell, 18 Cal.
8  2d 409, 115 P.2d 977 (1941).

9        The Kirsch Court set forth instances of reliance, both justifiable and not. Two are
10 analogous to the facts of this matter. "*In re Mullet*, 817 F.2d 677,679 (10th Cir. 1987)
11 (applies 'reasonable reliance' and found it did not exist where a bank rather blindly
12 accepted the word of an unknown, unproven, twenty-three year old customer)". *Id.* at
13 1460. (Emphasis added.) Another, "*In re White*, 130 Bankr. 979, 987 (Bankr. D. Mont.
14 1991) (applies "reasonable reliance" but described the creditor's acts as such
15 'unreasonably reckless wishful thinking as to constitute no reliance at all". *Id.* (Emphasis
16 added.)

17       The ultimate ruling in Kirsch is very specific. "Thus we conclude that a creditor
18 must prove justifiable reliance upon the representations of the debtor. In determining that
19 issue, the court must look to all of the circumstances surrounding the particular
20 transaction, and must particularly consider the subjective effect of those circumstances
21 upon the creditor."*Id.* at 1460.

22       Ms. Moore is an educated adult. She is not young. She is a teacher, with access to
23 information and technologies. Her reliance on statements made by a man on a dating
24 website without garnering additional information before entrusting significant funds to a
25 stranger, is absurd. This is a clear case of "wishful thinking" or desperation, as set forth
26 above. The old phrase that "if something [or someone] sounds too good to be true, it

Law Office of
Demetras & O'Neill
230 East Liberty Street
Reno, Nevada 89501
(775) 348-4600

7

1  usually is," certainly applies to this case. Ms. Moore was unreasonably reckless and
2  suffered a loss because of her actions.

3      The resulting divestiture of her funds based on the circumstances could have been
4  easily predicted. Based upon this analysis, her claim for nondischargeability against the
5  Debtor should fail. "Exceptions to discharge must be plainly expressed, and are strictly
6  construed in favor of the debtor." In re Neal, 113 B.R. 607 (9th Cir. 1990).

7      The Ninth Circuit Court has also ruled that such determinations based upon a
8  factual analysis cannot be subject to summary judgment. "We have held that summary
9  judgment is generally an inappropriate way to decide questions of reasonableness because
10 the jury's unique competence in applying the 'reasonable man' standard is thought
11 ordinarily to preclude summary judgment." In re Software Toolworks Inc., 50 F.3d 615,
12 612 (9th Cir. 1994) (quoting TSC Indus. v. Northway, Inc., 426 U.S. 438, 450 n.12, 96
13 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

14     Finally, that same court has found "...summary judgment is not precluded
15 altogether on questions or reasonableness. **It is appropriate "when only one conclusion**
16 **about the conduct's reasonableness is possible**. *Id*. at 622 *see also Westra,,* 409 F.3d at
17 827." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009) (Emphasis
18 added.)

19                                          **CONCLUSION**

20     The law as set forth above requires a finding by the Court that the creditor's
21 actions in giving a total stranger known to her for mere days were justifiable based upon
22 her reliance on the representations posted on a dating website. It is submitted that her
23 actions cannot be found justifiable and that her claim for nondischargeability must fail.
24 / / /
25 / / /
26 / / /

Law Office of
Demetras & O'Neill
230 East Liberty Street
Reno, Nevada 89501
(775) 348-4600

8

1  Therefore, it is respectfully requested that the motion for summary judgment filed
2  by the creditor in this action be Denied.
3  DATED this __27th__ day of April , 2012.
4                                        DEMETRAS & O'NEILL

6                             BY:    /s/    Shelly T. O'Neill
                               Shelly T. O'Neill, Esq.
7                                 Nevada Bar No. 986
                               230 East Liberty Street
8                                 Reno, Nevada 89501
                               (775) 348-4600 Telephone
9                                 (775) 348-9315 Facsimile
                               Counsel for Debtor

**Law Office of**
**Demetras & O'Neill**
**230 East Liberty Street**
**Reno, Nevada 89501**
**(775) 348-4600**